**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **AUTO-OWNERS INSURANCE COMPANY,)** | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 1:06-cv-2092** |
| ) | |
| **WEBSOLV COMPUTING, INC., doing** ) | **Hon. Charles R. Norgle** |
| **business as ECFIRST.COM, UDAY OM** ) | |
| **ALI PABRAI and GORTHO, LTD.,** ) | |
| ) | |
| **Defendants.** ) | |

## MOTION FOR ENTRY OF JUDGMENT

Now comes the Plaintiff, Auto-Owners Insurance Company ("Auto-Owners"), by and through its attorney, Robert Marc Chemers of Pretzel & Stouffer, Chartered, and hereby moves this Honorable Court to enter Judgment in its favor, pursuant to the mandate of the Court of Appeals in *Auto-Owners Insurance Co. v. Websolv Computing, Inc.*, 580 F. 3d 543 (2009), as follows:

1.      In April 2006, Auto-Owners filed this declaratory judgment action, seeking a declaration that it owed no duty to defend or indemnify Websolv Computing, Inc. (Websolv) or Uday Om Ali Pabrai against the underlying lawsuit.

2.      After all Defendants answered, Auto-Owners filed a motion for summary judgment, and Defendants subsequently filed a joint, cross-motion for summary judgment.[1]

---

[1]     In April 2007, this Court granted the parties' joint Motion to Join Defendant, substituting Gortho, Ltd. for Defendant Guy Bibbs.

3.     On August 31, 2007, this Court issued a memorandum opinion denying Auto-Owners' motion for summary judgment and granting Defendants' motion for summary judgment. Auto-Owners appealed.

4.     On September 1, 2009, the Court of Appeals issued an opinion, reversing the decision of this Court and remanding the matter "with instructions to enter summary judgment in favor of Auto-Owners." *Auto-Owners Insurance Co.*, 580 F. 3d at 552. A true and accurate copy of *Auto-Owners* is attached as Exhibit A.

WHEREFORE, the Plaintiff, Auto-Owners Insurance Company, respectfully requests that this Honorable Court enter summary judgment in its favor, pursuant to the mandate set forth by the Seventh Circuit Court of Appeals in *Auto-Owners Insurance Co. v. Websolv Computing, Inc.*, 580 F. 3d 543 (2009).

Respectfully submitted:

**s/ Robert Marc Chemers**
Robert Marc Chemers Bar Number: 00431508
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 578-7548
Fax: (312) 346-8242
E-Mail: rchemers@pretzel-stouffer.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06-cv-2092 |
| | ) | |
| WEBSOLV COMPUTING, INC., doing | ) | Hon. Charles R. Norgle |
| business as ECFIRST.COM, UDAY OM | ) | |
| ALI PABRAI and GORTHO, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that Plaintiff, Auto-Owners Insurance Company's

**Motion for Entry of Judgment** was filed electronically this <u>1st</u> day of <u>December, 2009</u>.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's electronic system.

| | |
|---|---|
| James K. Borcia | Daniel A. Edelman |
| Tressler Soderstrom Maloney & Priess, LLP | Cathleen M. Combs |
| 233 South Wacker Drive | James O. Latturner |
| Suite 2200 - Sears Tower | Julie Clark |
| Chicago, Illinois 60606 | Edelman, Combs & Latturner, LLC |
| (312) 627-4104 - Phone | 120 South LaSalle Street, 18th Floor |
| (312) 627-1717 - Fax | Chicago, Illinois 60603 |
| jborcia@tsmp.com | (312) 739-4200 - Phone |
| **(Attorneys for Websolv Computing, Inc.,** | (312) 419-0379 - Fax |
| **d/b/a ECFIRST.COM, Uday Om Ali Pabrai)** | **(Attorneys for Guy Bibbs)** |

Respectfully submitted:

**s/ Robert Marc Chemers**

Robert Marc Chemers Bar Number: 00431508
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 578-7548
Fax: (312) 346-8242
E-Mail: rchemers@pretzel-stouffer.com
*Attorneys for Plaintiff*

# EXHIBIT A



LEXSEE 580 F. 3D 543



Analysis
As of: Dec 01, 2009

## AUTO-OWNERS INSURANCE COMPANY, Plaintiff-Appellant, v. WEBSOLV COMPUTING, INCORPORATED, doing business as ECFIRST. COM, UDAY OM ALI PABRAI, and GORTHO, LIMITED, Defendants-Appellees.

### No. 07-3286

### UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

### 580 F.3d 543; 2009 U.S. App. LEXIS 19633

### September 3, 2008, Argued
### September 1, 2009, Decided

**SUBSEQUENT HISTORY:** Rehearing denied by, Rehearing, en banc, denied by *Auto-Owners Ins. Co. v. Websolv Computing, Inc., 2009 U.S. App. LEXIS 22081 (7th Cir. Ill., Oct. 1, 2009)*

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 06 C 2092--Charles R. Norgle, Sr., Judge.
*Auto-Owners Ins. Co. v. Websolv Computing, Inc., 2007 U.S. Dist. LEXIS 65339 (N.D. Ill., Aug. 31, 2007)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant insured was sued in Illinois state court for sending an unsolicited fax advertisement in violation of the Telephone Consumer Protection Act (TCPA), *47 U.S.C.S. § 227*, for which it sought a defense. Plaintiff insurer filed suit, seeking a declaratory judgment that it had no duty to defend. Applying Illinois law, the U.S. District Court for the Northern District of Illinois held that the claim was covered. Plaintiff appealed.

**OVERVIEW:** The district court applied Illinois law and, relying on an Illinois Supreme Court opinion that rejected the view that an advertising-injury provision did not cover TCPA claims, found in defendant's favor. The district court mistakenly believed that the forum state's

substantive law applied and that the parties' stipulation could be ignored. The district court should have applied the forum state's choice-of-law rules to find which state's substantive law applied; those factors pointed to applying Iowa law. The issue was whether the advertising-injury coverage required plaintiff to defend a claim for infringement of seclusion interests. Standing by the analysis that was rejected by the Illinois court, the court read the advertising-injury provision to mean that it covered only claims to alleged invasions of secrecy interests. The TCPA protected seclusion interests. Thus, the advertising-injury provision did not cover TCPA claims. Also, because the policy expressly excluded damage that was expected or intended by the insured-- here, the use of ink and paper- -defendant had no duty to defend for property damage. The "separation of insureds" provision did not aid defendant.

**OUTCOME:** The court reversed the judgment of the district court and remanded with instructions to enter judgment in favor of plaintiff insurer.

**LexisNexis(R) Headnotes**

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN1] An appellate court reviews a district court's choice-of-law decision de novo.

*Insurance Law > Claims & Contracts > Choice of Law*
[HN2] Courts honor reasonable choice-of-law stipulations in contract cases regardless of whether such stipulations were made formally or informally, in writing or orally.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN3] Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Insurance Law > Claims & Contracts > Choice of Law*
[HN4] It is the exceptional circumstance that a federal court, or any court for that matter, will not honor a choice of law stipulation.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
[HN5] When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > Significant Relationships*
[HN6] Illinois applies the "most significant contacts" test to choice-of-law disputes.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > Significant Relationships*
*Insurance Law > Claims & Contracts > Choice of Law*
[HN7] In insurance-coverage cases, Illinois considers a variety of factors to determine which state's substantive law should apply, including the domicile of the insured, the place of delivery of the policy, and the place of performance. Illinois places the most importance on the location of the insured risk.

*Civil Procedure > Appeals > Appellate Jurisdiction > Certified Questions*
[HN8] Certification is appropriate only when the case concerns a matter of vital public concern, where the issue

will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to decide the issue.

*Torts > Intentional Torts > Invasion of Privacy > Appropriation > General Overview*
*Torts > Intentional Torts > Invasion of Privacy > False Light Privacy > General Overview*
*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*
*Torts > Intentional Torts > Invasion of Privacy > Public Disclosure of Private Facts > General Overview*
[HN9] There are four ways in which one's right of privacy can be invaded: (1) unreasonable intrusion upon another's seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that places another in a false light. These rights are organized into two broad categories--rights involving secrecy interests and rights involving seclusion interests. Secrecy interests involve the right to keep certain information confidential; seclusion interests involve the right to be left alone.

*Contracts Law > Contract Interpretation > General Overview*
*Insurance Law > Claims & Contracts > Policy Interpretation > Ordinary & Usual Meanings*
*Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language*
[HN10] Iowa, like Illinois, gives undefined words in an insurance contract their ordinary meaning. However, Iowa also refers to closely related or associated policy language to illuminate the meaning of insurance-coverage provisions.

*Torts > Intentional Torts > Invasion of Privacy > Intrusion > Elements*
*Torts > Intentional Torts > Invasion of Privacy > Public Disclosure of Private Facts > Elements*
[HN11] "Publication" is implicated only where the relevant concern is secrecy; one can violate another's right to seclusion without publicizing anything.

COUNSEL: For AUTO-OWNERS INSURANCE COMPANY, Plaintiff - Appellant: Robert M. Chemers, Attorney, PRETZEL & STOUFFER, Chicago, IL; David S. Osborne, Attorney, LINDSAY, RAPPAPORT & POSTEL, LLC, Chicago, IL.

For WEBSOLV COMPUTING, INCORPORATED, doing business as ECFIRST. COM, UDAY OM ALI PABRARI, Defendants - Appellees: James K. Borcia, Attorney, TRESSLER, SODERSTROM, MALONEY &

PRIESS, LLP, Chicago, IL.

For GORTHO LIMITED, Defendant - Appellee: Daniel A. Edelman, Attorney, EDELMAN, COMBS & LATTURNER, Chicago, IL.

**JUDGES:** Before EASTERBROOK, Chief Judge, and CUDAHY and SYKES, Circuit Judges.

**OPINION BY:** SYKES

**OPINION**

[*545] SYKES, *Circuit Judge.* This insurance-coverage dispute involves the interpretation of an "advertising injury" [*546] clause in a commercial general liability policy. Websolv Computing, Inc., was sued in Illinois state court for sending an unsolicited fax advertisement to a dental office. Websolv tendered the defense of this suit to its insurer, Auto-Owners Insurance Com pany, which accepted it under a reservation of rights. Auto-Owners then filed this action in federal court seeking [**2] a declaratory judgment that it had no duty to defend Websolv in the underlying Illinois suit. The district court applied Illinois law and held that Websolv's policy with Auto-Owners covered the claim. We reverse. Iowa law--not Illinois law--applies here. Under Iowa law the insurance policy does not require Auto-Owners to defend Websolv in the underlying suit.

**I. Background**

In September 2003 Guy Bibbs sued Websolv in Illinois state court for sending an unsolicited one-page fax advertisement to his dental office. Bibbs claimed, among other things, that Websolv violated the Telephone Consumer Protection Act ("TCPA"), *47 U.S.C. § 227.* [1] The fax at issue was an advertisement for seminars to train health-care professionals how to comply with the terms of the Health Insurance Portability and Accountability Act. The parties later agreed to substitute Gortho, Ltd., Bibbs's dental practice, as the plaintiff, and the state court dismissed with prejudice all claims related to Bibbs. Websolv was insured by Auto-Owners under a commercial general liability ("CGL") policy and tendered its defense to the insurer. Auto-Owners accepted the tender, appointed counsel, and reserved its right to argue that [**3] it had no duty to defend Websolv under the terms of the policy.

> 1 Bibbs also sued Uday Om Ali Pabrai and John Does 1 through 10. Bibbs alleged violations of the TCPA and the Illinois Consumer Fraud Act, *815 ILL. COMP. STAT. § 505/2,* as well as claims for common-law conversion and "property dam age."

Auto-Owners then filed this action in federal court seeking a declaration that it had no duty to defend Websolv. The parties agreed that Iowa law should control and filed cross-motions for summary judgment. Despite the parties' stipulation to Iow a law, the district court concluded that Illinois law governed. It granted Websolv's motion for summary judgment, holding that under Illinois law the insurance contract required Auto-Owners to defend the type of claims at issue here. It based its decision on the Illinois Supreme Court's opinion in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill. 2d 352, 860 N.E.2d 307, 307 Ill. Dec. 653 (Ill. 2006),* which held that "advertising injury" policy language like that at issue here covered TCPA claims. Auto-Owners appealed, arguing that (1) the district court erred by applying Illinois law rather than Iowa law; and (2) Auto-Owners is entitled to summary judgment under Iowa [**4] law.

**II. Discussion**

**A. Choice of Law** We begin by addressing the district court's decision to apply Illinois law rather than Iowa law to this dispute. [HN1] We review a district court's choice-of-law decision de novo. *Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 572 (7 th Cir. 1995).* The parties expressly agreed in the district court that Iowa law applied, but the district court applied Illinois law for two reasons. First, the judge believed he was required to apply the substantive law of the forum state. This was incorrect. Second, the judge believed he could ignore the stipulation of the parties because neither party had briefed the court on the substance of Iowa law. This, too, was incorrect.

First, and most importantly, the parties agreed that Iowa law should control [*547] their dispute. [HN2] We honor reasonable choice-of-law stipulations in contract cases regardless of whether such stipulations were made formally or informally, in writing or orally. *Lloyd v. Loeffler, 694 F.2d 489, 495 (7th Cir. 1982).* [HN3] "Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc., 942 F.2d 425, 427 (7th Cir. 1991).* [HN4] "[I]t is the exceptional circumstance [**5] that a federal court, or any court for that matter, will not honor a choice of law stipulation." *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998).* Here, Auto-Owners filed its motion for summary judgment without explicitly making a choice-of-law argument. Websolv immediately moved to certify questions of state law to the Iowa Supreme Court, arguing that "the present matter [calls] for application of Iowa law." In its response Auto-Owners agreed that Iowa law should apply and also noted that the parties had "explicitly agreed in open court . . . that Iowa substantive law applies in this case." This plainly amounts to a stipulation by the parties that Iowa law controls their dispute.

Indeed, Websolv has never objected to the application of Iowa law--either in the district court or on appeal. In its brief on appeal, Websolv explicitly stated it "does not disagree that Iowa law governs." Rather, Websolv has argued that Iowa courts would adopt the same interpretation of the policy language as the Illinois Supreme Court did in *Valley Forge*. This is an argument over the content, not the applicability, of Iowa law. Because the parties agreed that Iowa law should [**6] govern and because the choice of Iowa law is entirely reasonable, the district court should not have applied Illinois law.

The district court also was mistaken in its belief that it had to apply the substantive law of the forum state. [HN5] When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)*. [HN6] Illinois, the forum state, applies the "most significant contacts" test to choice-of-law disputes. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., 321 Ill. App. 3d 622, 747 N.E.2d 955, 961, 254 Ill. Dec. 543 (Ill. App. Ct. 2001)*. [HN7] In insurance-coverage cases, Illinois considers a variety of factors to determine which state's substantive law should apply, including the domicile of the insured, the place of delivery of the policy, and the place of performance. *Id.* Illinois places the most importance on the location of the insured risk. *Mass. Bay Ins. Co., 136 F.3d at 1122*. All of these factors point to Iowa in this case: The insurance policy was delivered to Websolv, an Iowa corporation, at its Iowa [**7] headquarters through an Iowa agency, and the risk is located in that state. Under Illinois choice-of-law principles, Iowa substantive law clearly applies.

Finally, the district court believed it could apply Illinois law because neither party had briefed the court on the substance of Iowa law. The court cited *Employers Mutual Casualty Co. v. Skoutaris, 453 F.3d 915 (7th Cir. 2006)*, to support this determination. That case, however, simply notes that the default rule that the law of the forum state applies when neither party suggests otherwise. *Id. at 923* ("[W]e apply the law of the forum state . . . since neither party has challenged the district court's choice of law."). Here, by contrast, the parties specifically agreed that Iowa law, not Illinois law, should apply.

In any event, the parties *did* brief the court on the substance of Iowa law. After [*548] agreeing that Iowa law applied, Auto-Owners specifically requested permission to file a supplemental memorandum in support of its motion for summary judgment addressing the substance of Iowa law. Instead of granting Auto-Owners' motion, the district court instructed the briefing

to continue as scheduled. In its response to Auto-Owners' summary-judgment [**8] motion, Websolv explained that there was no controlling Iowa law but argued that Iowa shared the same basic contract principles as Illinois, which had a decision--*Valley Forge*--directly on point. Auto-Owners then filed a reply discussing why Iowa contract-law principles would lead Iowa to a different result from that reached in Illinois. [2]

2 Websolv makes a related argum ent that Auto-Owners failed to show that Iowa law differed from Illinois law in any material respect. It cites Illinois cases purportedly standing for the rule that Illinois courts presume the law of the governing jurisdiction is the sam e as Illinois unless the party shows a material difference between the two. The cases Websolv cites, however, appear to be based on waiver; in those cases the parties did not cite to *any* authority from the purportedly applicable jurisdiction. Here, on the other hand, the parties agreed that there is no Iowa case directly on point. Without recourse to specific Iowa caselaw, Auto-Owners argued from general principles of Iowa insurance law (for which it cited to Iowa cases), as well as caselaw from other jurisdictions. We do not think Illinois requires any more from litigants. *See Sterling Fin. Mgmt. v. UBS PaineW ebber, Inc., 336 Ill. App. 3d 442, 782 N.E.2d 895, 902, 270 Ill. Dec. 336 (Ill. App. Ct. 2002)* [**9] (assuming that a conflict exists when the law of the applicable jurisdiction is unresolved or unclear).

## B. Does the Insurance Policy Cover Gortho's Claims?

Our next question is whether, under Iowa law, the terms of the CGL policy require Auto-Owners to defend Websolv against Gortho's claim s. Gortho's primary claim against Websolv is that it violated the TCPA by faxing an unsolicited, one-page advertisem ent to Gortho. The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *47 U.S.C. § 227(b)(1)(C)*. It also permits persons or entities tosue in state court for violations of the TCPA and to recover between $ 500 and $ 1,500 in damages for each violation. *Id.* Websolv argues that Auto-Owners is required to defend it from Gortho's claims under two separate provisions in the policy--the "advertising injury" provision and the "property dam age" provision.

### 1. "Advertising Injury" Coverage

The insurance policy specifically requires Auto-Owners to defend against suits alleging " 'advertising injury' caused by [**10] an offense committed in the course of advertising [the insured's] goods, products or

services." The contract then defines "advertising injury" as follows:

"Advertising injury" means injury arising out of one or more of the following offenses:

      a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      b. Oral or written publication of material that violates a person's right of privacy;

      c. Misappropriation of advertising ideas or style of doing business; or

      d. Infringement of copyright, title or slogan.

Websolv contends that the language in subsection (b) triggers Auto-Owners' duty to defend the TCPA claim. In response Auto-Owners claims that the right of privacy referred to in subsection [*549] (b) only covers secrecy-based privacy interests rather than seclusion-based privacy interests and that a TCPA suit asserts an invasion of a seclusion-based interest. While Iowa has no caselaw precisely on point, [3] we conclude that it would more likely accept the interpretation that Auto-Owners advances.

    3 Because Iowa has no pertinent caselaw on this question, Gortho asks us to certify this issue to the [**11] Iowa Supreme Court. [HN8] Certification is appropriate only when " 'the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to [decide] . . . the issue.' " *State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 672 (7th Cir. 2001)* (quoting *In re Badger Lines, Inc., 140 F.3d 691, 698-99 (7th Cir. 1998)*). While the issue is certainly outcome-determinative, it is hardly one of vital public concern. Furthermore, the issue is not likely to recur. As both parties acknowledge, the insurance industry in 2005 began issuing a standard endorsement specifically excluding coverage for TCPA claims. As this issue only arises in cases involving insurance contracts issued before 2005, it is not worthy of certification.

The insurance policy does not define the "right of privacy," and that phrase can have multiple meanings and refer to a variety of rights. The *Restatement (Second)*

*of Torts* identifies [HN9] four ways in which one's right of privacy can be invaded: (1) unreasonable intrusion upon another's seclusion; (2) [**12] appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that places another in a false light. *§ 652A(2)*. We have previously organized these rights into two broad categories--rights involving secrecy interests and rights involving seclusion interests. *Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc., 392 F.3d 939, 941 (7th Cir. 2004)* ("The two principal meanings [of privacy] are secrecy and seclusion, each of which has multiple shadings."). Secrecy interests involve the right to keep certain information confidential; seclusion interests involve the right to be left alone. For example, "[a] person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion." *Id.*

The underlying suit here only involves seclusion interests. Gortho does not contend that Websolv's fax advertisement revealed secret or proprietary information about it; rather, it alleges that the [**13] unsolicited fax intruded on its right to be left alone. [4] Therefore, the question in this case is whether the "advertising injury" coverage in the CGL policy requires Auto-Owners to defend Websolv in a suit claiming an infringement of Gortho's seclusion interests.

    4 Gortho, as a corporation, does not have any com m on-law seclusion rights. *See RESTATEMENT (SECOND) OF TORTS § 6521 cm t. c* ("A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four form s of invasion covered by [ § 652B ]."). Any seclusion interests it asserts derive from the TCPA, not common law.

As we have noted, Iowa has no precedent on this exact question. [5] Instead, the [*550] parties offer only general principles of insurance-contract interpretation culled from Iowa cases, which are too generic to be of much help. However, this is not the first time that we have been asked to interpret this particular policy language without the benefit of a state high-court decision on point. In *American States Insurance Co. v. Capital Associates*, we were faced with this same "advertising injury" question under Illinois law. *392 F.3d 939.* At the time, [**14] Illinois had no relevant decisions interpreting this sort of provision, and we had to predict how the Illinois Supreme Court would decide the question. We concluded that the advertising-injury provision did not cover claims arising under the TCPA

for two reasons. First, we noted that businesses generally do not enjoy a common-law right to seclusion, making it unlikely that the "right to privacy" provision in a corporate insurance policy was meant to cover seclusion interests. *Id. at 942.* Second, we reasoned that the use of the word "publication" in the provision made it more probable that the provision only covered claims involving secrecy interests. As we noted, "[i]n a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant." *Id.* We concluded that the insurer had no duty to defend against seclusion-type claims under Illinois law. *Id. at 943.*

>    5 In 2007 a district court in this circuit attempted to answer this question under Iowa law and concluded that the advertising-injury provision covered TCPA claim s. *Am. Home Assurance Co. v. McLeod USA, Inc., 475 F. Supp. 2d 766 (N.D. Ill. 2007)*. It rested its conclusion on [**15] the fact that Illinois had recently adopted this interpretation and predicted that Iowa would too. *Id. at 772.* We disagree for the reasons we explain in the text.

Two years later, the Illinois Supreme Court had the opportunity to decide the issue. It disagreed with our analysis in *American States* and held instead that under Illinois law advertising-injury policy provisions cover TCPA claims. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 223 Ill. 2d 352, 860 N.E.2d 307, 307 Ill. Dec. 653 (Ill. 2006)*. Specifically, the court disagreed that the word "publication" narrowed the scope of "privacy rights" to only those related to secrecy. The court interpreted "publication" to mean nothing more than "communication." *Id. at 316-17.* "By faxing advertisements to the proposed class of fax recipients as alleged in [the] complaint, Swiderski published the advertisements . . . in the general sense of communicating information to the public . . . ." *Id. at 317.* The Illinois Supreme Court disavowed our conclusion to the contrary, stating that our interpretation of the provision was inconsistent with Illinois' policy of giving undefined contract terms their plain and ordinary meanings. *Id. at 322-23.*

We are now faced with this question [**16] a second time, but under Iowa law rather than Illinois law. We stand by our analysis in *American States*, even though Illinois has since adopted a different approach. We conclude that Iowa is more likely to adopt our interpretation rather than the one adopted by the Illinois Supreme Court. It is true that [HN10] Iowa, like Illinois, gives undefined words in an insurance contract their ordinary meaning. *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991)*. However, Iowa also refers to closely related or associated policy language to illuminate the meaning of insurance-

coverage provisions. *Kibbee v. State Farm Fire & Cas. Co., 525 N.W.2d 866, 869 (Iowa 1994)*. We continue to read the policy's use of the word "publication" in the advertising-injury definition to narrow the scope of the "privacy rights" referred to in the same clause. The provision provides coverage for "oral or written publication of material that violates a person's right of privacy." The most natural reading of this language is that it covers claims arising when the insured publicizes some secret or personal information--not claims arising when the insured disrupts another's seclusion.

[HN11] "Publication" [**17] is implicated only where the relevant concern is secrecy; one can violate another's right to seclusion without publicizing anything. *See, e.g., Doe v. Mills, 212 Mich. App. 73, 536 N.W.2d 824, 832 (Mich. Ct. App. 1995)* ("An action for intrusion upon [*551] seclusion focuses on the *manner* in which information is obtained, not its *publication*; it is considered analogous to a trespass.") (emphasis added); *RESTATEMENT (SECOND) OF TORTS § 652B cmt. b* (1977) ("The intrusion itself makes the defendant subject to liability, even though there is no publication . . . ."). One who knocks repeatedly on another's door late at night or takes photographs of another from across the street may violate the person's seclusion rights even though no "publication" has occurred. We think it stretches the advertising-injury language too far to interpret "publication" to include the type of activity at issue in this case. The TCPA protects seclusion interests irrespective of publication, but the "publication" language in subsection (b) of the policy's definition of "advertising injury" strongly suggests that this coverage only applies to alleged invasions of secrecy interests.

The other subsections of the definition of "advertising [**18] injury" also support this interpretation. The other three provisions of the advertising-injury definition focus on harm arising from the *content* of an advertisement rather than harm arising from mere *receipt* of an advertisement. The surrounding provisions cover advertising-injury claims for libel, slander, misappropriation, and copyright infringement-- all of which require the examination of the content of the offending advertisement. [6] It is therefore reasonable to infer that subsection (b) also concerns harm emanating from the content of an advertisement; that is, it is reasonable to read subsection (b) to refer only to violations of secrecy interests. Here, Gortho is not complaining about the content of the fax; rather, it complains that the very fact the fax was sent violated the corporation's right to be left alone under the TCPA. Accordingly, we conclude that the advertising-injury provision does not cover claims brought under the TCPA.

>    6 Auto-Owners also argues that the phrase "right of privacy" refers only to Iowa's state-law tort of

invasion of privacy and does not include violations of federal law like the TCPA, which protects similar interests. As support it argues that the [**19] surrounding prov isions all refer to specific state-law torts. Given our conclusion, we need not address this alternative argument. We note, however, that subsection (d) refers to copyright infringement, which arises under federal law rather than state common law. Therefore, it is not unreasonable to assume that the phrase "right of privacy" encompasses rights arising under federal law as well as state tort law.

## 2. Property-Damage Provision

Under the CGL policy, Auto-Owners also has a duty to defend its insured against claims arising from property dam age, defined as "physical injury to tangible property." However, the policy specifically excludes property damage that is expected or intended from the standpoint of the insured. Websolv argues that Gortho's claim is a claim for property damage because the unsolicited fax advertisement used ink and paper from Gortho's fax machine. While it is true that the one-page fax advertisement consumed a small amount of ink and one sheet of paper from Gortho's machine, this consequence was both expected and intended by Websolv. Because the policy expressly excludes damage that is expected or intended by the insured, Auto-Owners has no duty to defend [**20] Websolv under this provision. *See Resource Bankshares Corp. v. St. Paul

Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir. 2005)* ("It is obvious to anyone familiar with a modern office that receipt is a 'natural or probable consequence' of sending a fax, and receipt alone [results in] . . . depletion of the recipient's time, toner and paper . . . ."); *Am. States Ins. Co., 392 F.3d at 943* ("[J]unk faxes use up the recipients' ink and paper, but senders anticipate that consequence.").

[*552] Websolv attempts to evade this fairly obvious conclusion by arguing that the policy's "separation of insureds" provision requires us to evaluate the property dam age from the perspective of the company separately from the perspective of the employee who actually sent the fax. In other words, Websolv contends that while the fax-sending employee m ay have intended to use up Gortho's toner and paper, Websolv itself intended no such thing, and therefore it did not expect or intend the resulting property damage. The primary problem with this argument is that Gortho's complaint in the underlying case alleges that Websolv sent the fax and that Pabrai (the individual defendant in the case) merely "authorized and approved" [**21] it. Accordingly, the "separation of insureds" provision does not help Websolv.

For the foregoing reasons, we REVERSE the decision of the district court and REMAND with instructions to enter summary judgment in favor of Auto-Owners.